O’Neall, J.
delivered the opinion of the Court.
The two first grounds of appeal have not been at all relied on in the argument: indeed, as taken, they were founded in mistake. For the declarations of Mr. Mikell, the testator, were submitted to the jury, as other facts in the case, to enable them to decide what were the boundaries of the Red House tract of land, as understood and intended to be expressed by the deed of the Master in Equity. That this was the proper course, needs no further or other comment than to refer to Perry v. Morgan, 1 Strob. 8, and to the same case decided at the last sittings in Columbia.
The 3d, 4th and 5th grounds suppose there was error in the charge that the plaintiff must recover or fail, according to the description in his deed — “that the parol agreement to make up the quantity to 150 acres, could not now have effect.” The first part of this charge is a truism in law, about which there is and can bo no dispute. The second is also admitted to be true in terms, but it is supposed that the parol agreement, although it could not be specifically enforced in this action, yet might be regarded as defining the boundary. This might be true if there were any existing boundary to which it could apply; but there is none. It is expected to give effect to it, that the jury should make some intermediate new line.
This cannot be done, for a law Couit sits to ascertain the rights of the parties, according as they have fixed them: it has no power to declare what, in good conscience, they ought to be, and to compel the parties to accordingly acknowledge,- and allow them to have effect.
The 6th ground makes the only real question in the-case: what was the Red House tract, at the execution of the deed? This was purely a question of fact, resolvable alone by the verdict of the jury. They have decided it in favor of the defendant, and I think their verdict ought not to be disturbed. It is very true, that when Ephraim Mikell bought the Red-House tract, it was represented by the plat mentioned in the 6th ground. It is also equally true, that the old line ditch, to which the plaintiff insists oil extending his deed, was then the boundary: but Mr. Mikell was also the owner of the adjoining tract, called .the Crawford tract, after his purchase, and, for the convenience of his agricultural operations, he had a right to attach part of the Red House tract to the Crawford tract, and continue to the combined parcels the old name. That he did this, is apparent from the testimony of his son and executor, Jenkins Mikell. When he devised the Red House and Crawford tracts, he gave to his wife a life *378 estate in the balance of the Red House tract, (after taking off fifty acres for his son, John Calder Mikell,) and to his son William A. Mikell he gave the Crawford tract immediately, and in remainder the said balance of the Red House tract. The executor, Jenkins Mikell, as tho agent of his mother, fixed the fence, which the jury have found as the boundary of the plaintiff’s deed, as he then acknowledged, and known western limit of the Red House tract. For at least eleven years before the plaintiff’s purchase, the overseer, Mr. Owens, had known and considered it as the boundary. When the gentlemen who negotiated the treaty of sale were conferring, they regarded the fence as the boundary: the Red House tract, with that as its western boundary, was the subject of their contract. From not having the papers before me when I made out my report, I omitted to state that the plaintiff’s deed, after having given a' description of the Red House tract by quantity, and the contiguous tracts, says, “having such shape and marks as are represented by the eastern division of a general plan of the lands of the said William A. Mikell:” on referring to that plan, it lays down three tracts of land, viz: Davant’s, Crawford’s, and part of the Red House tract. The Davant tract constitutes the western division, and is separated from the Crawford tract by a well designated line or bank: the Crawford tract constitutes the centre; the separation between it and the Red House, the eastern division, is not designated otherwise than by the representation on the plat of the line fence put up by Jenkins Mikell, extending from the southern to the northern line. The old line ditch, the original western boundary of the Red House, was not designated in the plan: it is now merely marked in pencil. Under these circumstances, and especially when connected with the proof that Ephraim Mikell spoke of all the Red House tract west of the place where the fence stands, as parcel of the Crawford tract, and that his family, including his executor and devisees, so understood and treated it after his death, it is fair to conclude, that what the parties meant by the “eastern division,” was that portion of the Red House tract lying east of the fence. It is very true that the plaintiff, in such a location, has not his quantity. It is seldom that quantity is of much weight in a question of location. Sometimes, when it is the only certainty in a description, it might and very probably would have a controlling effect. But here, it is no more certain than the other parts of the description: it is “about 150 acres, more or less.” The plaintiff obviously chose to give up the certainty of having precisely 150 acres, for the prospect of getting by the description, *379 which he obtained; seven acres more. Like others equally unfortunate, in grasping at more; he has lost the certainty of less. The motion is dismissed.
Richardson, J. and Evans, J. concurred.
Wardlaw, J. and Frost, J. dissented.
Withers, J. absent, from sickness.

Motion dismissed.